**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**BROWN BOTTLING GROUP, INC.**                                                        **PLAINTIFF**

**V.**                                                **CIVIL ACTION NO. 3:19-CV-142-HTW-LGI**

**IMPERIAL TRADING CO., L.L.C.;**
**LONG WHOLESALE, INC.; AAA**
**CASH & CARRY WHOLESALE, INC;**
**THE CORR-WILLIAMS COMPANY;**
**THE H.T. HACKNEY CO.; MS**
**WHOLESALES 1 INC.; and W.L.**
**PETREY WHOLESALE CO., INC**                                                        **DEFENDANTS**

---

**MEMORANDUM OPINION AND ORDER**

---

**PREAMBLE**

This is an unfair competition and tortious interference action. Plaintiff Brown Bottling Group, Inc. ("Brown Bottling" or "Plaintiff") alleges that for over (50) years, Brown Bottling has held the exclusive bottling, distribution, and sale rights for trademarked PepsiCo, Inc. ("PepsiCo") and Keurig Dr. Pepper Inc. ("KDP") soft drink products in an exclusive geographic territory encompassing much of central and southern Mississippi, as well as two counties in Alabama ("the Exclusive Territory"). These soft drinks include various brands, such as: Pepsi-Cola; Mountain Dew; Gatorade; Dr. Pepper; Sunkist; and Canada Dry.

According to Plaintiff, PepsiCo and KDP granted Brown Bottling these exclusive territorial rights by way of numerous "Executive Bottling Appointments" and "Exclusive Licensing Agreements" (collectively, "EBAs"). Plaintiff asserts that these EBAs serve as perpetual license agreements granting Brown Bottling the *sole* and *exclusive* contractual right to

1

manufacture, sell and distribute trademarked PepsiCo and KDP products in the Exclusive Territory.

Defendants herein are various wholesale distribution companies that trade in a variety of goods. In 2018, Brown Bottling learned that Defendants had been selling trademarked PepsiCo and KDP soft drink products to retailers within the Exclusive Territory. Brown Bottling alleges that Defendants do so outside all authorized trade channels because they have no distribution rights from PepsiCo, KDP, Brown Bottling, or any other applicable entity.  Brown Bottling argues that Defendants are, therefore, unauthorized competitors of Brown Bottling, the legally operating bottler who owns the Exclusive Territory.

Brown Bottling filed the lawsuit *sub judice* to enforce its territorial exclusivity rights and to enjoin Defendants from engaging in further allegedly unauthorized sales, which, according to Brown Bottling, deceive and confuse purchasers into wrongfully believing they are buying genuine trademarked PepsiCo and KDP soft drink products.

Defendants, however, argue that Brown Bottling greatly exaggerates the scope of its rights under the EBAs. Defendants submit that the EBAs do not grant Brown Bottling any exclusive territorial rights. Rather, say Defendants, the EBAs only grant Brown Bottling the right to bottle trademarked PepsiCo and KDP products, and possibly distribute and sell *those* products; they do not grant Brown Bottling the right to police the quality of all PepsiCo or KDP trademarked products originating from *other* licensed bottlers or bring suit for the same purpose. Defendants, accordingly, ask this court to dismiss Plaintiff's lawsuit and deny Brown Bottling any relief requested.  Having carefully considered all submissions of the parties and the relevant jurisprudence, this court finds as follows.

## I.    BACKGROUND

### A. PARTIES

Plaintiff Brown Bottling Group, Inc., (hereinafter referred to as "Plaintiff" or "Brown Bottling") is a corporation duly registered in the State of Mississippi with its principal place of business in Ridgeland, Mississippi. Brown Bottling is a bottler, distributor, and licensee of Pepsi-Cola and Dr. Pepper products in Central and South Mississippi and in two (2) counties in western Alabama, which territory is discussed in more detail *infra*.

Defendant Imperial Trading Co., L.L.C. ("Imperial Trading") is a limited liability corporation duly registered in the State of Mississippi with its principal place of business in Elmwood, Louisiana.

Defendant Long Wholesale, Inc. ("Long Wholesale") is a corporation duly registered in the State of Mississippi with its principal place of business in Meridian, Mississippi.

Defendant AAA Cash & Carry Wholesale, Inc. ("AAA") is a corporation duly registered in the State of Mississippi with its principal place of business in Clinton, Mississippi.

Defendant The Corr-Williams Company ("Corr-Williams") is a corporation duly registered in the State of Mississippi with its principal place of business in Columbia, Mississippi.

Defendant The H.T. Hackney Co. ("Hackney.") is a corporation duly registered in the State of Florida with its principal place of business in Milton, Florida.

Defendant MS Wholesales 1 Inc. ("MS Wholesales") is a corporation duly registered in the State of Mississippi with its principal place of business in Jackson, Mississippi.

Defendant W.L. Petrey Wholesale Co., Inc. ("Petrey") is a corporation duly registered in the State of Alabama with its principal place of business in Luverne, Alabama.

## B. PERTINENT FACTS

Brown Bottling is a licensee of multiple liquid refreshment beverage brands owned or licensed by PepsiCo and KDP. On May 1971, PepsiCo and Brown Bottling entered into an EBA, which granted Brown Bottling a license to bottle and distribute various Pepsi products, such as: Pepsi-Cola; Mountain Dew; and Gatorade. PepsiCo's business model grants its licensed bottlers exclusive geographical areas. Brown Bottling alleges it is PepsiCo's exclusive bottler in thirty-three (33) Mississippi counties[1] and two (2) Alabama counties[2].

The pertinent provision of the Brown Bottling/Pepsi EBA reads as follows:

> PepsiCo, Inc., a corporation organized under the laws of the State of Delaware, with general offices in Purchase, New York, … hereby appoints: [Brown Bottling] as its exclusive bottler, to bottle and distribute the carbonated beverage …, sold under the trademarks Pepsi and Pepsi-Cola in the following described territory …, and nowhere else…

[Docket no. 21-1].

Similarly, KDP and Brown Bottling executed on January 8, 1975, an EBA, which grants Brown Bottling the license to bottle and distribute various KDP products, such as: Dr. Pepper; Sunkist; and Canada Dry. KDP allegedly has granted Brown Bottling exclusive bottling rights for five (5) product lines in varied geographical areas.[3]

---

[1] Adams, Amite, Claiborne, Clarke, Copiah, Covington, Forrest, Franklin, Greene, Hinds, Issaquena (the southern portion of the county), Jasper, Jefferson, Jefferson Davis, Jones, Kemper, Lamar, Lauderdale, Lawrence, Lincoln, Madison, Marion, Neshoba, Newton, Perry, Pike, Rankin, Simpson, Smith, Walthall, Warren, Wayne, Wilkinson, and Yazoo.

[2] Choctaw and Sumter.

[3] Dr. Pepper: Mississippi counties – Clarke, portions of Copiah, Covington, Forrest, Greene, Hinds, portions of Humphreys, Jasper, Jefferson Davis, Jones, Kemper, Lamare, Lauderdale, Madison, Marion, Neshoba, Newton, Perry, Rankin, portions of Scott, Simpson, Smith, Wayne, and Yazoo.
>   Alabama counties – Choctaw and Sumter.
> Canada Dry Brands: Mississippi counties – Adams, Amite, Claiborne, Clark, Copiah, Covington, Forrest, Franklin, Greene, Hinds, portions of Issaquena, Jasper, Jefferson, Jefferson Davis, Jones, Kemper, Lamar, Lauderdale, Lawrence, Lincoln, Madison, Marion, Neshoba, Newton, Perry, Pike, Rankin, portions of Scott, Simpson, Smith, Walthall, Warren, Wayne, Wilkinson, and Yazoo.
>   Alabama counties – Choctaw and Sumter.

The Brown Bottling/DPK EBA provides:

Now, therefore, for and in consideration of the mutual benefits and provisions herein set out, [DPK] does hereby grant unto [Brown Bottling] the exclusive right and license to carbonate and bottle under [DPK's] trademark that certain drink known as "Dr. Pepper" and to sell and distribute said drink under said trademark within the territory described in Exhibit "A" attached hereto, and no other (which territory shall be indivisible), in bottles only, which bottles are to be those distinctive bottles approved by [DPK] and none other, and to use the trademark on the bottled drink in advertising for and in said territory, and [DPK] does hereby agree that such exclusive license shall continue so long as [DPK], or its successors or assigns, shall continue the manufacture of Dr. Pepper bottler's concentrate, unless sooner terminated under the provisions herein after set out…

[Docket no. 21-2].

PepsiCo and KDP utilize the following system to manufacture and distribute its products. PepsiCo and KDP produce the concentrates for their trademarked soft-drinks and then sell that concentrate to a network of licensed independent bottlers. The bottlers then take the concentrate and combine it with carbonated water, sweetener, and other ingredients. The finishing and bottling process are governed by strict quality control standards mandated by PepsiCo and KDP. After the products are finished, the bottlers bottle the finished product, label it, and distribute it in their geographic area. According to Brown Bottling, its EBAs with PepsiCo and KDP also mandate that Brown Bottling must promote and market the product in the Exclusive Territory.

PepsiCo and KDP products are sold directly by Brown Bottling to retailers through a system known as Direct-Store-Delivery ("DSD"). Under the DSD system, Brown Bottling must manage the PepsiCo and KDP production in customer outlets by securing shelving space, merchandising the product, and seeking product placement advantage. Brown Bottling alleges that PepsiCo and KDP require Brown Bottling to maintain the quality of the finished products

Sunkist and Hawaiian Punch Brands: Mississippi counties – Adams, Amite, Claiborne, Clark, Copiah, Covington, Forrest, Franklin, Greene, Hinds, Jasper, Jefferson, Jefferson Davis, Jones, Kemper, Lamar, Lauderdale, Lawrence, Lincoln, Madison, Marion, Neshoba, Newton, Perry, Pike, Rankin, Scott, Simpson, Smith Walthall, Warren, Wayne, Wilkinson, and Yazoo.

Alabama counties – Choctaw and Sumter.

through inspection, replacement, and applicable destruction of subpar products placed in its Exclusive Territory.

According to Brown Bottling, PepsiCo and KDP, in an effort to maintain quality control and to incentivize the licensed bottlers, forbids a practice known in the soft drink industry as "transshipping". Transshipping, says Brown Bottling, occurs where some entity manufactures, distributes, or sells PepsiCo or KDP products in a bottler's geographic territory without permission from PepsiCo, KDP, or the bottler assigned to that geographic region. Brown Bottling alleges that such transhippers are "free-riders" because they receive the benefit of the licensed bottler's investment dollars. PepsiCo has created a transhipper reporting system where licensed bottlers may report other licensed bottlers for encroaching upon their exclusive territories. The transgressing bottler, after an investigation by PepsiCo, may be subject to a "fine", payable to the injured bottler.

Brown Bottling alleges that transshipping causes multiple and significant damage to Brown Bottling's business. Transshippers, says Brown Bottling, do not provide sales support, product rotation, and merchandising to the accounts they service. This lack of quality control supposedly leads to large quantities of outdated stock remaining on retail shelves for unsuspecting end purchasers. Transhippers also maximize short term sales which decreases shelf space for Brown Bottling, allegedly damaging Brown Bottling's ability to compete against other brand owners. Transshippers further allegedly take advantage of the advertising and goodwill that Brown Bottling has invested in its Exclusive Territory. Brown Bottling finally asserts that because transshippers hijack legitimate bottlers' accounts, the bottlers are not able  adequately to predict the market demand for their products, a consequence which leads to over or under stocking of Brown Bottling's own inventory.

Brown Bottling asserts it has invested millions of dollars into its bottling and distributing business to ensure it thrives within the Exclusive Territory. In support of its assertion, Brown Bottling states it has: built state-of the-art bottling facilities and distribution warehouses; increased manpower; provided consistent high-quality products and services to its retailers; and narrowly tailored promotional and advertising campaigns to resonate with local consumers.

### 1. *Brown Bottling's Amended Complaint*

Brown Bottling, by way of its Amended Complaint, alleges that Defendants acquire their PepsiCo and KDP product inventories—i.e., perishable beverages meant for human consumption— from unauthorized secondary markets and ship these inventories into Brown Bottling's Exclusive Territory. Brown Bottling's asserts that Defendants' allegedly unauthorized transactions pose a serious risk of injecting low-quality, non-genuine, and often short-dated[4] or outdated PepsiCo and KDP products into Brown Bottling's carefully cultivated and exclusive territories. Inferior quality products bearing PepsiCo or KDP's trademarks allegedly cause Brown Bottling to lose market share and experience other irreparable reputational harm.

Brown Bottling's Amended Complaint [Docket no. 21] explains all this, as follows:

103. For that reason, the unauthorized system Defendants created to acquire and distribute trademarked PepsiCo and KDP products caused those products to undergo material changes that would not have been readily apparent to the retailers or consumers who subsequently purchased those products. The sale of this inferior and materially different product caused confusion, mistake, and deception on the part of local retailers and consumers, and Defendants' practice of injecting sub-par product into Brown Bottling's exclusive territory is intentional, willful, and malicious.

104.  By transshipping trademarked PepsiCo and KDP brands into Brown Bottling's exclusive territory, Defendants have damaged (and continue to damage) Brown Bottling, local retailers, and consumers, by, among other things, (1) undermining the exclusive territorial rights of Brown Bottling; (2) supplying retailers and consumers with non-genuine, materially different, and outdated PepsiCo and KDP products; (3) tainting PepsiCo and KDP's trademarks with inadequate customer service and substandard

---

[4] According to Plaintiff, short-dated products are nearing their expiration date, and likely to expire before consumers purchase them.

product; (4) undermining the hard-earned reputation and capital investments of Brown Bottling; and (5) causing Brown Bottling to temporarily or permanently lose valued customers or sales in its exclusive territory.

Brown Bottling and PepsiCo sent Cease and Desist letters to Defendants after learning that Defendants allegedly were transshipping in Brown Bottling's exclusive territory. The Cease and Desist Letters [Docket nos. 21-4 to 21-9; 21-11, 21-12, 21-13] warned the Defendants that Brown Bottling's owned exclusivity rights and identified the specific customers and accounts that each Defendant allegedly was targeting. The letters further informed the Defendants that they were interfering with Brown Bottling's legitimate and statutorily-ratified business expectancies and were improperly engaged in the unauthorized retail distribution of PepsiCo and KDP's[5] trademarked goods. The letters asked Defendants to cease transshipping in Brown Bottling's Exclusive Territory.

Defendants allegedly ignored Brown Bottling's and PepsiCo's demands. Aggrieved, Brown Bottling filed the subject suit against Defendants, asserting the following causes of action against all Defendants: Declaratory Judgment under the Federal Declaratory Judgement Act[6] and Federal Rule of Civil Procedure 57[7]; Tortious Interference with Actual or Prospective Business Relations; and Violation of the Lanham Act, 15 U.S.C. 1125 (a)(1)(A)[8].

---

[5] The Cease and Desist Notices reference PepsiCo, Inc. ("PepsiCo") and Dr. Pepper Snapple Group, Inc. ("DPSG"). No party has sought to explain this discrepancy; therefore, this court assumes DPSG and KDP refer to the same company.

[6] (a) In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(9) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.
28 U.S.C.A. § 2201 (West)

[7] Rule 57 governs the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201.The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate. The court may

Brown Bottling, by way of its Amended Complaint, seeks the following declarations from this court:

1. Brown Bottling has the sole and exclusive right to manufacture, distribute, and sell trademarked PepsiCo and KDP products in Brown Bottling's exclusive territory pursuant to the rights granted to Brown Bottling under its EBAs and the Soft Drink Interbrand Competition Act.

2. PepsiCo and KDP soft drink products in Brown Bottling's exclusive territory face substantial and effective competition from other liquid refreshment beverages of the same general class.

3. Defendants are not authorized or licensed to manufacture, sell, distribute, deliver, or stock trademarked PepsiCo and KDP soft drink products within the boundaries of Brown Bottling; and

4. Following a full trial on the merits, any additional declaratory relief necessary for Brown Bottling to fully resolve this controversy and to adjudicate the parties' respective rights and obligations, especially with regard to any other legal issues that cannot be fully resolved through an award of damages and injunctive relief.

### 2.  *Procedural Posture*

Before this court now are the following interrelated motions to dismiss Plaintiff's Amended Complaint: Defendants Imperial and Long Wholesales' Motion to Dismiss Amended Complaint [Docket no. 29]; Defendant Petrey's Motion to Dismiss Amended Complaint [Docket no. 38]; Defendant Corr-William's Motion to Dismiss Amended Complaint [Docket no. 40]; and Defendant Hackney's Motion to Dismiss Amended Complaint [Docket no. 64].

---

order a speedy hearing of a declaratory-judgment action.
Fed. R. Civ. P. 57

[8] (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person…

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
15 U.S.C.A. § 1125 (West)

Defendants urge this court to dismiss Plaintiff's Amended Complaint essentially for four (4) reasons: (1) that Brown Bottling cannot establish a viable cause of action to maintain its declaratory judgment action; (2) that Brown Bottling's tortious interference claim requires illegality and, according to defendants, transshipping is not illegal; (3) that Brown Bottling has not pled any misrepresentation as required under the Lanham Act; and (4)  that Brown Bottling has failed to join an indispensable party.

## II.     JURISDICTION

Plaintiff has invoked the subject-matter jurisdiction of this court under Title 28 U.S.C. § 1331[9], often referred to as "federal question jurisdiction." Under federal question jurisdiction, this court has the power to exercise subject-matter jurisdiction over a lawsuit if a plaintiff alleges some claim or right arising under the United States Constitution or federal law.

 Upon a review of the pleadings of the parties, this court finds it possesses federal question subject matter jurisdiction because Plaintiff's Amended Complaint asserts claims under the following federal laws:  the Lanham Act, 15 U.S.C.  § 1125 (a); the Soft Drink Interbrand Competition Act, 15 U.S.C. § 3501[10]; and the Federal Declaratory Judgment Act, Title 28 U.S.C. § 2201.

---

[9] The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.
28 U.S.C.A. § 1331 (West).

[10] Nothing contained in any antitrust law shall render unlawful the inclusion and enforcement in any trademark licensing contract or agreement, pursuant to which the licensee engages in the manufacture (including manufacture by a sublicensee, agent, or subcontractor), distribution, and sale of a trademarked soft drink product, of provisions granting the licensee the sole and exclusive right to manufacture, distribute, and sell such product in a defined geographic area or limiting the licensee, directly or indirectly, to the manufacture, distribution, and sale of such product only for ultimate resale to consumers within a defined geographic area: Provided, That such product is in substantial and effective competition with other products of the same general class in the relevant market or markets.
15 U.S.C.A. § 3501 (West)

This court further has supplemental jurisdiction over Brown Bottling's state law claim for tortious interference with business relations under 28 U.S.C. § 1367(a)[11].

## III.    STANDARD OF REVIEW

### A.  Federal Rule of Civil Procedure 12(b)(6)[12]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also PSKS, Inc. v. Leegin Creative Leathers Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 663.

While courts generally may not look beyond the pleadings when ruling on a Rule 12(b)(6) motion to dismiss, the district court may "refer to matters of public record, as well as to documents attached to the complaint." *Hicks v. Parker*, 349 F. App'x 869, 870 (5th Cir. 2009).

---

[11] (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties
28 U.S.C.A. § 1367 (West)

[12] (b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: […]

(6) failure to state a claim upon which relief can be granted; and

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

Fed. R. Civ. P. 12

When an "allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls." *Smit v. SXSW Holdings, Inc.*, 903 F.3d 522 (5th Cir. 2018) (emphasis added) (quoting *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004)).

Motions brought pursuant to Rule 12(b)(6) ordinarily are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). A court may dismiss a complaint, or any part of it, only when the plaintiff has failed to allege "enough facts to state a claim to relief that is plausible on its face" and fails to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 127 S.Ct. 1955, 1965, 1974, 167 L.Ed.2d 929 (2007).

## B.  Federal Rule of Civil Procedure 12(b)(7)[13]

Under Rule 12(b)(7), a party may move "to dismiss a case in which a party is absent that Rule 19 requires to be present." *Nerium Int'l, LLC v. Aloeveritas Ams., LLC*, Civ. Action No. 3:17-CV-2994-B, 2018 U.S. Dist. LEXIS 68486 *4 (N.D. Tex. Apr. 24, 2018). Under Rule 19(a)[14], a person "'subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if . . . the person's absence will prevent the court from" giving full relief among existing parties, or "the person has an interest in the subject

---

[13] (b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: […]
        (7) failure to join a party under Rule 19.

[14] (a) Persons Required to Be Joined if Feasible.
(1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
        (A) in that person's absence, the court cannot accord complete relief among existing parties; or
        (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
                (i) as a practical matter impair or impede the person's ability to protect the interest; or
                (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19

of the case, and disposing of it in the person's absence will either 'impair or impede the person's ability to protect the interest,' or create a risk of multiple or inconsistent obligations for an existing party because of the interest." *Id*. at *4-5 (quoting Fed. R. Civ. P. 19(a)(1)).

In deciding a Rule 12(b)(7) motion, courts "'must accept all factual allegations in the complaint as true and draw inferences'" in the non-movant's favor. *Id*. at *5 (internal citation omitted). The moving party "has the initial burden of demonstrating that a missing party is necessary." *Hood ex rel. Miss. v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009). But once initial assessment of the factual allegations "'indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder.'" *Id*. (quoting *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 2006)).

## IV.    LEGAL ANALYSIS

### A.  Failure to Join a Necessary Party

This court first addresses Defendants' claim that Brown Bottling's Amended Complaint must be dismissed for failure to join PepsiCo and KDP as necessary parties.

As stated *supra*, a party is necessary under Rule 19 (a) if the party's absence prevents a court from giving complete relief among the existing parties, or if the person claims an interest in the subject of the case and is so situated that disposition of the case in the party's absence may "as a practical matter impair or impede the person's ability to protect that interest" or leave the existing parties "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." *Id*. Fed. R. Civ. P. 19.

Defendants argue that PepsiCo and DPK are necessary parties for two (2) reasons: (1) that PepsiCo and DPK are the trademark owners and a decision of the relative rights of the parties in this case would impair their ability to protect their own rights under the EBAs and

possibly affect their interests in their trademarks; and (2) that failure to join PepsiCo and KDP would expose these parties to a substantial risk of double, multiple or otherwise inconsistent obligations.

Brown Bottling, contrariwise, argues that PepsiCo and DPK are not necessary parties. According to Brown Bottling, it is not seeking to enforce or dispute PepsiCo or DPK's respective trademarks. Brown Bottling avers that its lawsuit seeks only to establish Defendants' liability for damages due to EBAs in Brown Bottling's exclusive geographical territories. Brown Bottling does not answer Defendants' assertion that this lawsuit could expose the parties to multiple or otherwise inconsistent obligations.

Defendants also argue that "PepsiCo and KDP are necessary parties because they are parties to the license agreements and the owners of the relevant trademarks, and a determination of the various rights under, or affected by, the license agreements would impair their ability to protect their rights under the license agreements and their interests in the relevant trademarks." Citing *Nerium Int'l, LLC v. Aloeveritas Ams., LLC*, Civ. Action No. 3:17-CV-2994-B, 2018 U.S. Dist. LEXIS 68486 *4 (N.D. Tex. Apr. 24, 2018) (holding trademark owner necessary party where its absence would impair its ability to protect its interest in trademarks at issue). Brown Bottling responds that *Nerium* is distinguishable because in that lawsuit the plaintiff and a third party disputed the ownership of a trademark for which that plaintiff had sued the defendant for infringement.

Finally, Defendants state that "[i]t is well-settled that 'the licensor of a trademark is *usually* treated as a necessary or indispensable party in an infringement action by its licensee.'" quoting *Association of Co-Operative Members, Inc*., 684 F.2d 1134, 1143 (5th Cir. 1982), cert. denied, 460 U.S. 1038 (1983) (emphasis added).

14

This court concurs that *Nerium* is not applicable in the case *sub judice*, as none of the parties herein has disputed the ownership of the trademarks. Brown Bottling states specifically that it does not seek to establish rights under the EBA's as between Brown Bottling and PepsiCO or KDP. Nor does Brown Bottling seek to establish the rights of any of the Defendants under the EBA's.  Brown Bottling alleges that it has suffered damage to its particular customer base and market prospects as a result of Defendants' tortious interference and unfair competition. These claims do not apply to PepsiCo or KDP. This court, accordingly, must reject Defendants' argument that PepsiCo and KDP are necessary and indispensable parties. The Defendants' motion to dismiss under Rule 19, therefore, is denied.

### B.  Brown Bottling's Claim for Declaratory Judgment

The United States Court of Appeals for the Fifth Circuit has explained that the Federal Declaratory Judgment Act, Title 28 U.S.C. § 2201, "which authorizes a federal court to 'declare the rights and other legal relations of any interested party seeking such declaration,' is merely a procedural device and does not create any substantive rights or causes of action." *Smitherman v. Bayview Loan Serv.*, LLC, 727 F. App'x 787, 792 (5th Cir. 2018) (citing 28 U.S.C. § 2201(a); *Harris Cty. Tex. v. MERSCORP, Inc.*, 791 F.3d 545, 552 (5th Cir. 2015); *Okpalobi v. Foster*, 244 F.3d 405, 423 n. 31 (5th Cir. 2001) (*en banc*)). Where a plaintiff fails to assert a viable cause of action to underpin its request for declaratory relief, the declaratory judgment action must be dismissed. *Smitherman*, 727 F. App'x at 792. Defendants in the matter *sub judice* contend that Brown Bottling has failed to assert any such viable cause of action because Brown Bottling has no substantive rights under common law or the Soft Drink Interbrand Competition Act to enforce the EBAs against the Defendants, who are neither parties to the EBAs nor in privity with Brown Bottling in any way.

### 1. *The Soft Drink Act*

Brown Bottling's Amended Complaint asserts that "Brown Bottling's claims arise under federal law, including…the Soft Drink Interbrand Competition Act (15 U.S.C. § 3501)." [Docket no. 21, ¶ 35].  Brown Bottling further requests a declaration from this court that "Brown Bottling has the sole and exclusive right to manufacture, distribute, and sell trademarked PepsiCo and KDP products in Brown Bottling's exclusive territory pursuant to the rights granted to Brown Bottling under its EBAs and the Soft Drink Interbrand Competition Act." [Docket no. 21, ¶ 131 a]. Finally, in its Prayer for Relief, Brown Bottling asks this court to "[…] enforce and protect Brown Bottling's exclusive territorial rights under the Soft Drink Interbrand Competition Act, the EBAs, and federal law." [Docket no. 21, p. 48, ¶ 1].

Defendants allege that the Soft Drink Act does not provide a private right of action, much less a cause of action against Defendants, who are third parties completely unrelated to the licensing agreement. [Docket no. 65, p. 11]. Defendants argue that no court has ever held that the Soft Drink Act creates a private right of action; consequently, Brown Bottling cannot positively invoke the provisions of, or seek protection under, the Soft Drink Act in a cause of action for declaratory judgment.

Brown Bottling, however, argues that its Amended Complaint does not plead a separate claim for relief pursuant to the Soft Drink Act. Brown Bottling states, instead, that its reference to the Soft Drink Act only provides pertinent history of the soft drink industry's exclusive territorial system, and to provide context to its claims that Defendants' conduct violates the unfair prohibitions of Section 43(a) of the Lanham Act and constitutes tortious interference with Brown Bottling's actual and prospective business relations.

The Defendants' interpretation of the Amended Complaint cannot force Plaintiff to adopt a particular claim. *See* e.g. *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 294 (1938)( finding that if [a plaintiff] does not desire to try his case in the federal court, he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove."). The Plaintiff is the master of his own Complaint and may eschew any causes of action, even if such suits could be warranted by the alleged facts. *See* e.g. *Fair v. Kohler Die & Spe-cialty Co*., 228 U.S. 22, 25 (1913) (noting that "the party who brings a suit is master to decide what law he will rely upon").

Here, even though Brown Bottling, throughout its Amended Complaint, mentions the Soft Drink Act, Plaintiff has explicitly declared that "Brown Bottling does not plead claims for relief under the Soft Drink here." [Docket no. 51, p. 3,] Further, contends Plaintiff, "Brown Bottling uses the [Soft Drink Act] to provide necessary context but ***not as a separate cause of action***." [Docket no. 71, p. 15](emphasis added).   This court, therefore, finds that Brown Bottling has conceded it does not seek to assert a cause of action seeking damages under the Soft Drink Act[15].

Next, to determine the extent of a licensee's rights under a license agreement, this court must first look to the language of the agreement itself while employing general principles of contract law. E.g., *Automation By Design, Inc. v. Raybestos Prods. Co*., 463 F.3d 749, 754 (7th Cir. 2001). "When a contract is expressed in unambiguous language, its terms will be given their plain meaning . . . ." *Reliant Energy Servs. v. Enron Can. Corp*., 349 F.3d 816, 822Cir. (5th Cir. 2003). The "mere fact that the parties may disagree on the meaning of a contractual provision is not enough to constitute ambiguity." *Id*.

---

[15] This court applies the same analysis to Defendants' argument that Brown Bottling seeks to assert a claim for trademark infringement. Brown Bottling states specifically that it does seek to enforce or dispute PepsiCo and KDP's respective trademark rights.

The PepsiCo EBA reads as follows:

> PepsiCo, Inc… hereby appoints: [Brown Bottling] as its exclusive bottler, to bottle and distribute the carbonated beverage…

The Brown Bottling/DPK EBA similarly provides:

> [DPK] does hereby grant unto [Brown Bottling] the exclusive right and license to carbonate and bottle under [DPK's] trademark that certain drink known as "Dr. Pepper" and to sell and distribute said drink under said trademark within the territory described in Exhibit "A"….

Defendants urge this court to find that the above quoted language from both EBAs does not grant Brown Bottling an exclusive distributorship over a certain geographical area. This court, however, must interpret both EBAs by the plain language of the EBAs themselves. *See Great American Ins. Co. v. Primo* 512 S.W.3d 890 (Tex. 2017); *Karol v. Polsinello et al*, 127 A.D.3d 1401 (2015). This court finds that the EBAs, on their face, designate Brown Bottling as PepsiCo and KDP's "exclusive" bottler and distributer in the designated areas. This finding is further supported by PepsiCo's Cease and Desist letter, whereby PepsiCo explicitly explains that "PepsiCo has agreements with bottlers…providing them with certain exclusive rights to distribute and sell PepsiCo products in their exclusive territories." [Docket no. 21, p. 32].

Accordingly, this court finds that Brown Bottling, has asserted a valid claim seeking a declaration of its rights, status, and legal relations relative to Defendants' allegedly wrongful conduct. Further, later to resolve the parties' competing positions regarding their respective rights under the EBA, this court cannot dismiss Brown Bottling's claims for declaratory relief at this early stage. Defendants' motion to dismiss for failure to declare a claim under the Federal Declaratory Act, therefore, is denied.

### C. Tortious Interference with Actual or Prospective Business Relations

In order to prevail on its claim for tortious interference with a business relationship, Brown Bottling, under Mississippi law, must establish four elements: "(1) The acts were

intentional and willful; (2) The acts were calculated to cause damage to the plaintiffs in their lawful business; (3) The acts were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) actual damage and loss resulted." *Biglane v. Under the Hill Corp.*, 949 So.2d 9, 15-16 (Miss. 2007) (internal citation omitted). Under this conjunctive test, "[i]f any of the factors are not met, there cannot be a finding of tortious inference with business." *Wrecker Works, L.L.C. v. City of Aberdeen, Mississippi*, 751 F. App'x 413, 422 (5th Cir. 2018).

To be actionable, the alleged interference must be "wrongful" in the sense that it is "without right or justifiable cause on part of the defendant[s]." *Vestal v. Oden,* 500 So.2d 954, 957 (Miss. 1986). Mississippi law imposes liability for tortious interference with business relations where "a person unlawfully diverts prospective customers away from [another person's] business." *See Seven Sears Techs., Inc. v. Infinite Computer Solutions, Inc*., 353 F. Supp. 3d 545, 549 (S.D. Miss. 2018).

Defendants assert that Brown Bottling's tortious interference claim fails for two (2) reasons: (1) that transshipping is not illegal, and therefore, not "wrongful" under Mississippi law; and (2) that Brown Bottling has suffered no actual damages to sustain a claim for tortious interference.

Defendants argue that their actions are not illegal because Mississippi law does not impose a licensing requirement on wholesalers of soft drinks. Defendants point to the Mississippi State Legislature's imposition of mandatory licensing requirements on auto dealerships and beer distributorships in contrast to the lack of requirements for soft drink distributors. According to Defendants, their resale of PepsiCo and KDP products amount to nothing more than a lawful competitive business practice.

Apparently, the Defendants argue that to be an actionable subject, transshipping must be illegal under some law, civil or criminal. This court, however, finds that whether transshipping is "illegal" is an ancillary issue and not dispositive here. As stated *supra*, to assert a claim for tortious interference, Brown Bottling need only establish that the alleged interference as "wrongful". Under longstanding Mississippi law, said interference is not wrongful and actionable if undertaken by someone in the exercise of a legitimate interest or right, which constitutes 'privileged interference.' *Irby et ux. v. Citizens National Bank of Meridian*, 239 Miss. 64, 121 So.2d 118, 119 (1960); *Wesley v. Native Lumber Co. et al*., 97 Miss. 814, 53 So. 346, 347 (1910); Restatement of Torts, secs. 767-774; 86 C.J.S. Torts § 44; 30 Am.Jur., Interference, secs. 21, 33, 41.

Brown Bottling claims that the Defendants' actions do not constitute such privileged interference. Rather, says Brown Bottling, Defendants wrongfully transshipped Pepsi and KDP products into its exclusive distribution area, thereby causing harm to Brown Bottling's business. Brown Bottling further alleges that because these transshipped products came into Brown Bottling's exclusive region via unauthorized channels, Defendants sold "materially different, non-genuine, sub-par and outdated" products, consequently damaging Brown Bottling's reputation within its Exclusive Territory.

Brown Bottling asserts Defendants had knowledge of the EBAs and its Exclusive Territory by way of the multiple Cease and Desist letters sent by Brown Bottling and PepsiCo., demanding that Brown Bottling stop reselling the trademarked products. Brown Bottling further alleges that these letters notified Defendants of how their actions interfered with the EBAs. The letters notified the Defendants that "[t]hrough their intrusion into Brown Bottling's exclusive territory, Defendants are intentionally and maliciously attempting to usurp Brown Bottling's

sales volume and corresponding revenue and goodwill with customers; and that Defendants are engaging in unfair competition, engaging in conduct contrary to the Soft Drink Interbrand Competition Act, and free-riding off of Brown Bottling's long-term investments in developing customer relationships and growing local demand for the PepsiCo and KDP brands throughout its exclusive territory."

In light of the foregoing allegations, this court finds that Brown Bottling has pled adequately that the Defendants' conduct was wrongful. Next, to prove damages in a tortious interference claim, Brown Bottling must show that it suffered "(1) a loss, and (2) that the defendant[s'] conduct caused the loss." *Cenac v. Murray*, 609 So. 2d 1257, 1271 (Miss. 1992).

Brown Bottling's Amended Complaint claims Defendants' conduct has caused Brown Bottling to suffer damages by way of:  loss of Brown Bottling's actual and prospective business relations with various customers and consumers located in its Exclusive Territory; interference with business expectancies; loss revenue in the amount of "hundreds of thousands of dollars; and damage to Brown Bottling's reputation and goodwill.

This court, accordingly, finds that Brown Bottling has alleged sufficient facts to survive *Biglane's* conjunctive test, as enumerated above. Defendants' acts, as alleged, were intentional and willful; calculated to cause damage to Brown Bottling in its business; done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the Defendant (which may constitute malice); and that these alleged acts caused Brown Bottling to suffer actual damage and loss.

Brown Bottling's claim here, in this court's eye, further satisfies the requirements of *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Therefore, this court denies, as it must, Defendants' motion to dismiss Plaintiff's claim for tortious interference with actual or prospective business relations.

### D. Violation of the Lanham Act

Brown Bottling's Amended Complaint lastly alleges violations of the Lanham Act, which in its relevant section reads:

> (a) Civil action
>
> > (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
> >
> > > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, […]
> >
> > shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
>
> 15 U.S.C.A. § 1125 (West).

Defendants first claim that because Brown Bottling does not own the PepsiCo and KDP trademarks, it does not have standing to bring suit under the Lanham Act.  Unlike a dismissal for lack of constitutional standing, which should be granted under the rule governing motions to dismiss for lack of subject matter jurisdiction, a dismissal for lack of prudential or statutory standing is properly granted under the rule governing motions to dismiss for failure to state a claim. Fed. Rule Civ.Proc.12(b)(1, 6) *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787 (5th Cir. 2011).

The Lanham Act provides a private cause of action *inter alia*.  Relevant here, the Lanham Act creats a cause of action for false affiliation and false advertising utilizing trademarks. Brown Bottling argues that Congress enacted Section 43(a) of the Lanham Act, Title 15 U.S.C. § 1125(a), to fashion a federal remedy against unfair competition. *Norman M. Morris Corp. v. Weinstein*, 466 F.2d 137, 141 (5th Cir. 1972). Standing under section 1125(a), therefore, says Brown Bottling, is broader than standing for trademark infringement under Section 32, Title 15 U.S.C. § 1114[16]. Section 32 trademark infringement claims may be brought only "by the registrant" of the trademark in question. *Id*. Section 43(a) unfair competition claims, however, are available to "any person who believes that he or she is or is likely to be damaged" by the prohibited conduct. Title 15 U.S.C. § 1125(a)(1).

Ownership of the trademark is thus immaterial to the standing under Section 43(a) *Exxon Corp. v. Humble Expl. Co*., 695 F.2d 96, 103 (5th Cir. 1983) (claims under § 1125(a) "can be maintained by plaintiffs who are not owners of a trademark"); see also *Dastar Corp. v. Twentieth Century Fox Film Corp*., 539 U.S. 23, 28-29 (2003) ("While much of the Lanham Act addresses the registration, use, and infringement of trademarks and related marks, § 43(a) is one of the few provisions that goes beyond trademark protection.").

---

[16] (1) Any person who shall, without the consent of the registrant--

> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C.A. § 1114 (West)

This court, in lockstep with the United States Court of Appeals for the Fifth Circuit, finds that Brown Bottling, as the trademark licensee, has standing to bring false affiliation claims under Section 43(a).

Having established it has standing to bring suit under the Lanham Act, this court looks to whether Brown Bottling has sufficiently established a claim of false affiliation under the Act. To prove a *prima facie* case of false affiliation, Brown Bottling must prove:

> (1) A false or misleading statement of fact about a product; (2) Such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers; (3) The deception is material, in that it is likely to influence the consumer's purchasing decision; (4) The product is in interstate commerce; and (5) The plaintiff has been or is likely to be injured as a result of the statement at issue.

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000)).

To prove its false association/affiliation claim, in the case *sub judice*, Brown Bottling must show that use of the mark is likely to cause confusion. 15 U.S.C. § 1125(a)(1)(A). The Fifth Circuit generally considers eight factors or "digits" when evaluating confusion claims but, "when a defendant uses a plaintiff's exact marks . . . courts within this Circuit have determined that a thorough analysis of the digits of confusion is unnecessary and a presumption of confusion exists." *Bridgestone Brands, LLC v. Katy Freeway Tire & Auto., Inc.*, No. CV H-15-2274, 2017 WL 6327652, at *6 (S.D. Tex. May 25, 2017) (citing *Choice Hotels Int'l, Inc. v. Patel*, 940 F. Supp. 2d 532, 540 (S.D. Tex. 2013) and *TGI Friday's Inc., v. Great Nw. Rests., Inc.*, 652 F. Supp. 2d 763, 767 (N.D. Tex. 2009)).

Although "confusion" is the threshold question for a Section 1125 (a) unfair competition claim, the Fifth Circuit in *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc., of Lafayette*, 988 F.2d 587, 592 (5th Cir. 1993) explained that it is not necessary for the plaintiff to demonstrate ***actual*** confusion; the public's belief that the mark's owner sponsored or otherwise approved the

use of the trademark satisfies the confusion requirement.  *See Board of Supervisors for Louisiana State University Agricultural and Mechanical College v. Smack Apparel Co.*, 550 F.3d 465, 484 (5th Cir. 2008) ("It is well established, however, that evidence of actual confusion is not necessary for a finding of a likelihood of confusion."); *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 203–04 (5th Cir. 1998) ("Actual confusion on the part of a consumer is not required to find a likelihood of confusion."). The Fifth Circuit further has explained that the "common thread" in evaluating the likelihood of customer confusion involves "some defect (or potential defect) in the product itself that the customer would not be readily able to detect." *Matrix*, 988 F.2d at 591.

Brown Bottling's Amended Complaint alleges the following in support of its claim under the Lanham Act: Defendants failed sufficiently to exercise quality control over the trademarked products sold to local retailers and consumers; that because the Defendants' transshipped products look similar to Brown Bottling's products, Brown Bottling's customers have no way of readily detecting the differences with regard to the quality and composition of the products they purchased; Defendants have sold materially different, non-genuine, sub-par, and outdated PepsiCo and KDP trademarked products to unwitting retailers and consumers who had no way of knowing those products were any different than the products authorized for sale by PepsiCo and KDP; and that, in engaging in this conduct, Defendants have distributed trademarked PepsiCo and KDP products in a manner that causes confusion, mistake, and deception with regard to the true source, origin, approval, and sponsorship of those products.  Brown Bottling contends it has been injured by the Defendants' conduct in the form of lost sales, lost goodwill, and enterprise value.

This court finds that Brown Bottling's well-pleaded allegations, accepted as true and viewed in the most favorable light, state a viable claim for false association under the Lanham Act. This court, accordingly, rejects Defendants' motion to dismiss Brown Botlling's claim for violations of the Lanham Act.

V.    CONCLUSION

For all the reasons stated *supra*, this court finds that, at this juncture, Defendants' various Motions to Dismiss must be denied in their entirety.

**IT IS, THEREFORE ORDERED** that Defendant Imperial Trading Co.'s Motion to Dismiss Amended Complaint [Docket no. 29] hereby is DENIED.

**IT IS FURTHER ORDERED** that Defendant W.L. Petrey Wholesale Co.'s Motion to Dismiss Amended Complaint [Docket no. 38] hereby is DENIED.

**IT IS FURTHER ORDERED** that Defendant The Corr-Williams Company's Motion to Dismiss Amended Complaint [Docket no. 40] hereby is DENIED.

**IT IS FURTHER ORDERED** that Defendant The H.T. Hackney Co.'s Motion to Dismiss Amended Complaint [Docket no. 64] hereby is DENIED

**IT IS FURTHER ORDERED** that the parties shall contact the chambers of United States Magistrate Judge LaKeysha Greer Isaac to schedule an Amended Rule 16 Scheduling Conference within fourteen (14) days of the entry of this order.

**IT IS FINALLY ORDERED** that in light of this court's order directing the parties to schedule the Rule 16 conference, Brown Bottling's Motion for Early Discovery [Docket no. 27] hereby is rendered MOOT and DENIED AS SUCH.

**SO ORDERED** this the 4th day of March, 2022.

**/s/HENRY T. WINGATE**
**UNITED STATES DISTRICT COURT JUDGE**