IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**BROWN BOTTLING GROUP, INC.**                                              **PLAINTIFF**

V.                                           CIVIL ACTION NO.: 3:19-CV-00142-HTW-LGI

**IMPERIAL TRADING CO., L.L.C.;**
**LONG WHOLESALE, INC.;**
**AAA CASH & CARRY WHOLESALE, INC.;**
**THE CORR-WILLIAMS COMPANY;**
**THE H.T. HACKNEY, CO.;**
**MS WHOLESALES 1 INC.; AND**
**W.L. PETREY WHOLESALE CO., INC.**                                      **DEFENDANTS**

## ORDER

Before the Court is the Motion to Bifurcate Trial [119] filed by Defendant The H.T. Hackney Co. and joined by Defendants Imperial Trading Co., L.L.C., Long Wholesale, Inc., AAA Cash and Carry Wholesale, Inc., The Corr-Williams Company, and W.L. Petrey Wholesale Co., Inc. Also before the Court is the Motion to Bifurcate Discovery [122], filed by Imperial Trading Co., L.L.C, Long Wholesale, Inc., Corr-Williams Company, and joined by The H.T. Hackney Co., W.L. Petrey Wholesale Co., Inc. and AAA Cash & Carry Wholesale, Inc. The movant-defendants are collectively referred to hereinafter as "Defendants".[1] Plaintiff Brown Bottling Group, Inc. ("Plaintiff" or "Brown Bottling") filed a Response in Opposition to Defendants' Motion to Bifurcate Trial [129], and Defendants submitted a Reply in Support of the Motion to Bifurcate Trial [133]. Likewise, Plaintiff filed a Response in Opposition to Defendants' Motion to Bifurcate Discovery [131], and Defendants submitted a Reply in Support of the Motion to Bifurcate Discovery [135]. The Court, having considered the submissions, the record, and relevant law, finds

---

1 Defendant MS Wholesales 1 Inc. did not join in the motions (119), (122) .

that the Motion to Bifurcate Trial [119] is GRANTED and the Motion to Bifurcate Discovery [122] is DENIED, as discussed below.

## ANALYSIS

### I.     Defendants' Motion to Bifurcate Trial [119]

Defendants seek to bifurcate the trial of the tortious interference claim into two phases: (1) liability and compensatory damages and (2) punitive damages.  Plaintiff seeks punitive damages for its pendent state-law claim for tortious interference, with actual or prospective business relations.  Defendants move for bifurcation, because they "expect [at the trial in this matter] that Brown Bottling will attempt to introduce evidence, or elicit testimony, regarding punitive damages prior to a jury finding of liability in connection with the tortious interference claim." *See* Doc. [120] at 2.

The decision to grant separate trials rests within the sole discretion of the trial court. *Guedry v. Marino*, 164 F.R.D. 181, 186 (E.D. La. 1995).  Defendants' Motion [119] seeks to bifurcate the trial into a phased trial rather than into separate trials, which is consistent with Federal Rule of Civil Procedure 42(b) and the provisions of Mississippi's punitive damages statute.  Rule 42(b) provides, "for convenience, to avoid prejudice, or to expedite and economize, the court *may* order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42. (Emphasis added).  Mississippi Code § 11-1-65 *mandates* the bifurcation of liability and compensatory damages from that of punitive damages.  While this court is not bound by the Mississippi state statute requiring bifurcation of punitive damages, federal district courts have followed the strict procedure outlined in § 11-1-65, in instances where granting the relief would be consistent with the provisions of Rule 42(b).  *See James v. Antarctic Mech. Servs., Inc.*, No. 3:18-CV-678, 2021 WL 4999012, at *2 (S.D. Miss. Oct. 27, 2021); *Cooper*

*v. Meritor, Inc.*, No. 4:16-CV-52-DMB-JMV, 2019 WL 1028530, at *2 (N.D. Miss. Mar. 4, 2019); and *Dykes v. Cleveland Nursing & Rehab. Ctr.*, No. 4:15-cv-76, 2018 WL 2967627, at *2 (N.D. Miss. June 12, 2018).

"Specifically, Miss. Code Ann. § 11–1–65(1)(c) provides that '[i]f, but only if, an award of compensatory damages has been made against a party, the court shall promptly commence an evidentiary hearing to determine whether punitive damages may be considered by the same trier of fact.'" *Boddie v. Walker*, 280 F. Supp. 3d 920, 921 (N.D. Miss. 2017) (citing Miss. Code Ann. §11-1-65(1)(a)-(e) (Rev. 2000). The Northern District Court has noted "one arguable interpretation of this statute is that the 'shall' language requires an evidentiary hearing on punitive damages to be held in the event that such damages are sought and an award of compensatory damages is entered against the defendant at trial." *Munson v. C.R. Bard, Inc.*, 561 F. Supp. 3d 655, 679 (N.D. Miss. 2021).

Further, "the Mississippi Supreme Court concluded in the decision of *Bradfield v. Schwartz*, 936 So. 2d 931, 938 (Miss. 2006):

> that the detailed procedure outlined [in section 11-1-65(1)(e)] must be meticulously followed because, without an evidentiary buffer at trial, juries will ultimately confuse the basic issue of fault or liability and compensatory damages with the contingent issue of wanton and reckless conduct which may or may not ultimately justify an award of punitive damages.

*Bradfield*, 936 So. 2d at 938.

The Court analyzes this motion, regarding the tortious interference action, by weighing the parties' positions against the provisions of Rule 42(b) to determine if bifurcation will: 1) promote convenience, 2) expedite proceedings, or 3) avoid unfair prejudice to a party. The Court carefully considers each factor. However, "only one of these three factors must be met to justify bifurcation." *Daniels v. Loizzo*, 178 F.R.D. 46, 47 (S.D.N.Y. 1998). *See also Ismail v. Cohen*,

706 F. Supp. 243, 251 (S.D.N.Y. 1989), aff'd, 899 F.2d 183 (2d Cir. 1990); *Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996); and *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1166 (7th Cir. 1983).

    A. *Prejudice*

First, the Court considers whether bifurcation will avoid unfair prejudice to the parties. Defendants argue that allowing Plaintiff to "mention or present evidence pertaining to punitive damages during the liability/compensatory damages phase on the tortious interference claim – such as evidence or discussion of Defendants' respective revenues or net worth – could lead to substantial prejudice against Defendants, especially considering Brown Bottling's strong local presence in Mississippi, which some Defendants do not have." Doc. [120] at 5. Defendants also submit that "ordering bifurcation will help to ensure that the jury does not return 'an inflated compensatory damage award based on consideration of the wrong evidence,' (i.e., evidence pertaining to punitive damages), during the liability/compensatory damages phase." *Id.* Defendants claim that Plaintiff "will not be prejudiced by bifurcation, because the punitive damages phase of trial will follow immediately after the liability and compensatory damages phase (in the event the Court determines that trial should proceed on the issue of punitive damages), and most witnesses presumably reside and/or do business in Mississippi." *Id.* Defendants further argue that bifurcation is necessary to avoid what they perceive as a "real risk of prejudice," adding:

> [S]ome Defendants are large companies without the sort of strong local presence Brown Bottling has. A jury could easily view this situation as out-of-towners muscling in on the local favorite's home territory, and so it is not hard to see how jury bias could arise in these circumstances. Couple that with allowing argument or evidence regarding Defendants' net worth during the liability phase, and we could see here *precisely* the type of improper jury bias the Supreme Court described in *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003). In other words, it is the totality of the circumstances described in *Campbell*, not net-worth evidence alone, that could lead to substantial prejudice here. Phasing the trial will avoid that prejudice.

Doc. [133] at 4.

Plaintiff claims it would be "unduly prejudiced by not being able to present evidence regarding Defendants' improper transshipping in Brown's exclusive territory, including their revenues from that activity" because it "is central to the issues in this case and is among the bases for Brown Bottling's compensatory damages." Doc. [130] at 5. Plaintiff also rebuts Defendants' argument by asserting that net worth and revenue information are insufficient claims of undue prejudice and are insufficient to support bifurcation.

The Supreme Court has recognized that inflammatory financial evidence can be especially destructive in the context of punitive damages, because of the leeway given to juries in selecting the appropriate amount necessary to punish and deter. *See State Farm Mut. Auto Ins.*, 538 U.S. at 417 (explaining how "punitive damages pose an acute danger of arbitrary deprivation of property" because of the "wide discretion" given to juries "in choosing amounts"). To be sure, juries are and should be afforded substantial room to exercise their discretion, but it is the court's responsibility to ensure that the tools the jury uses to exercise that discretion are appropriate. *See Mattison*, 947 F.2d at 105 ("When a jury is left to its own devices to take property or mete out punishment to whatever extent it feels is best in the course of the process, our sensibilities about that process are offended.").

The Court finds Plaintiff's argument that it will be forced to try the same case twice unavailing, given the common practice of bifurcating between liability and damages phases in trial. *See Wagoneka v. KT&G USA Corp.*, No. 4:18-CV-859, 2020 WL 6063096, at *2 (E.D. Tex. Oct. 14, 2020) ("To avoid prejudice, courts will often bifurcate claims so that the presentation of punitive-damages evidence occurs only after the jury has determined liability."); *see also Johnson v. Helmerich & Payne, Inc.*, 892 F.2d 422, 424 (5th Cir. 1990) ("[S]eparation of

5

issues of liability from those relating to damages is an obvious use for Rule 42(b) . . . ."); *EEOC v. Bass Pro Outdoor World, LLC*, 826 F.3d 791, 800 (5th Cir. 2016) ("Bifurcation of liability and damage is a common tool deployed by federal district courts in a wide range of civil cases*"*).

Moreover, "[p]rejudice is the Court's most important consideration in deciding whether to order separate trials under Rule 42(b)." *Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, 115 (E.D. La. 1992); *Utex Indus. v. Wiegand*, No. H-18-1254, 2020 WL 5879102, at *1 (S.D. Tex. Oct. 2, 2020) (finding it appropriate to bifurcate trials where defendant could suffer prejudice if the jury were allowed to hear evidence and arguments about the defendant's net worth when determining liability); *Dubea v. Simpson*, No. 9:07-CV-63-TH, 2009 WL 10677421, at *1 (E.D. Tex. Mar. 2, 2009) ("[T]he Court finds that evidence of [defendant's] net worth is relevant to the issue of exemplary damages. But, given the aforementioned risk of . . . prejudice to [defendant], the Court will bifurcate the issue of exemplary damages from the liability portion of the trial."). Accordingly, the first factor weighs in favor of granting the motion to bifurcate trial.

 B. *Convenience of the Parties*

Second, the Court considers the convenience of the parties. Plaintiff submits that Defendants did "not offer any argument or evidence that bifurcation is convenient" and therefore "have conceded that bifurcation is not convenient." Doc. [130] at 3. Defendants explain that they "did not argue about convenience because only one of the three bifurcation criteria need be met. . . and Defendants focused on the ones that are present in this case and support bifurcation (i.e., avoiding prejudice and expedition and economy, in addition to avoiding jury confusion)." Doc. [133] at 3. Because neither party argues that bifurcation will impact the convenience of the parties, the Court finds that the second factor does not weigh in favor of either conclusion.

### C. Judicial Economy and Expedition

Defendants reason that "bifurcation will expedite and economize trial by barring the presentation of punitive damages evidence and/or argument unless and until it is necessary." Doc. [120] at 5-6. Plaintiff contends that "Defendants' intentional and willful violation of Brown Bottling's exclusive rights are central to Brown Bottling's liability claim" because "[t]he same facts that support Brown Bottling's tortious interference claim will also, in part, show that Defendants willfully and maliciously violated Brown Bottling's rights and caused Brown Bottling injury." Doc. [130] at 6. Plaintiff submits that it "expects to use these same facts to show that Defendants acted with reckless disregard for Brown Bottling's rights in an effort to divert customers away from Brown Bottling." *Id.* Plaintiff argues that bifurcation would duplicate, not economize, presentation of evidence in this case, because:

> Brown Bottling sent cease and desist letters to the Defendants, notifying them of their contractual rights to exclusively distribute PepsiCo and KDP products in Brown Bottling's territory. Many Defendants even received cease and desist letters from PepsiCo. Nevertheless, they continued to sell in Brown Bottling's territory.

*Id.*

This Court recognizes that the tortious interference claims against the Defendants essentially requires that a trier of fact must consider one of the most important elements that is also necessary to prove punitive damages – malice. "Under Mississippi law, a claim for tortious interference with business relations requires proof of the following four elements: (1) the acts were intentional and willful; (2) the acts were calculated to cause damage to the plaintiffs in their lawful business; (3) the acts were done with the unlawful purpose of causing damage and loss without right or justifiable cause on the part of the defendant (*which constitutes malice*); and (4) actual loss and damage resulted. *PDN, Inc. v. Loring*, 843 So. 2d 685, 688 (Miss. 2003). Notably, "under Mississippi law, a claimant must prove by clear and convincing evidence that the defendant against

7

whom punitive damages are sought acted with *actual malice*, gross negligence which evidences a willful, wanton, or reckless disregard for the safety of others or committed actual fraud." *Cooper Tire & Rubber Co. v. Farese*, No. 3:02CV210-SA-JAD, 2008 WL 5188233, at *4 (N.D. Miss. Dec. 9, 2008) (citing Miss. Code Ann. § 11-1-65(1)(a)).

The Court finds that bifurcating the punitive damages phase of trial will support judicial economy and expedite the presentation of evidence. The Court agrees that "there is no guarantee that the Court will ultimately send the punitive damages claim to a jury, and so presenting punitive damages evidence and/or argument during the liability phase could prove a waste of time and resources." Doc. [133] at 4. "Even if bifurcation might somehow promote judicial economy, courts should not order separate trials when bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice." *Guedry* , 164 F.R.D. at  186. Accordingly, the third factor weighs slightly in favor of granting the motion to bifurcate trial.

After balancing the two competing claims of prejudice, the convenience of the parties and judicial economy, the Court finds that these considerations weigh in favor of Defendants' motion to bifurcate trial under Rule 42(b). The Court concludes that the goals of judicial economy and fairness will be best served if the trial is bifurcated to separate the liability and compensatory damages phase from the punitive damages phase at trial. The Court finds that a bifurcated trial is appropriate and thus, the Motion to Bifurcate Trial [119] is granted. If the jury reaches a verdict for Plaintiff after the first phase of trial, the trial will proceed to the punitive damages phase before the same jury. There will not be a need for separate witnesses. The Court will not permit any evidence of Defendants' net worth to enter evidence in the first phase of the trial.

This Court, in the exercise of its discretion, has therefore determined that trial in this case should be bifurcated into a liability and compensatory damages phase and a punitive damages

phase. Where a district court has exercised its discretion to bifurcate a punitive damage phase, it follows that evidence relevant only to an award of punitive damages is irrelevant at other stages. *See*, e.g., *Landrum v. Conseco Life Ins. Co.*, No. 1:12-cv-5, 2014 WL 28861, at *3 (S.D. Miss. Jan. 2, 2014). Of course, evidence otherwise relevant to liability or compensatory damages is not rendered inadmissible merely because it is also relevant to the issue of punitive damages. *Bossier v. State Farm Fire & Cas. Co.*, 2009 WL 3281128, at *1–2 (S.D. Miss. Oct. 9, 2009). This Court agrees that a phased trial is appropriate and thus, this motion [119] is granted.

## II. Defendants' Motion to Bifurcate Discovery [122]

Defendants also ask this Court to bifurcate the discovery phase of this case. "Trial courts are afforded 'broad discretion' in 'balancing the interests of both sides while looking for a discovery plan that reasonably fits the particular demands of the case.'" *Hawkins v. Miss. Farm Bureau Cas. Ins. Co.*, 2018 U.S. Dist. LEXIS 212445 *1 (S.D. Miss. Dec. 18, 2018) (quoting *Winkler v. Sunbelt Rentals, Inc.*, No. 3:12-CV-3789-B, 2014 WL 12596498, at *4 (N.D. Tex. July 10, 2014)). Rule 26 affords trial courts ample authority to control the sequence and timing of discovery. *EEOC v. Lawler Foods Inc.*, 128 F. Supp. 3d 972, 974 (S.D. Tex. 2015). "'[W]hen one issue may be determinative of a case, the court has discretion to stay discovery on other issues until the critical issue has been decided.' This principle of judicial parsimony is often invoked, for example, to justify postponing discovery on damages until liability has been established." *Id.* (quoting 8A Wright and Miller, Federal Practice and Procedure § 2040 (3d ed. 2010)).

Under Defendants' proposal[2] to bifurcate discovery, phase one of discovery would be limited to issues involving Plaintiff's declaratory judgment claim. Following the Court's ruling on

---

2 "The parties have 150 days to take discovery regarding Plaintiff's Declaratory Judgment claims and Defendants' defenses thereto, which, at a minimum, requires production of all "agreements", including amendments and communications with the licensor or trademark owner, for each trademark named in the Amended Complaint, or any Trademark under which Brown Bottling seeks

dispositive motions on this issue, the case would proceed, if necessary, to phase two, which would include all other issues, including the Plaintiff's Lanham Act claim and tortious interference claim. Defendants assert that the declaratory judgment claim is separate and distinct from all others and that bifurcated discovery saves the parties time and money and conserves judicial resources.

Specifically, Defendants assert that bifurcation of discovery promotes efficiency and conservation of resources. Doc. [123] at 3.  In support of this assertion, Defendants cite to *EEOC v. Lawler Foods, Inc.*, 128 F. Supp. 3d 972, 974 (S.D. 2015) to persuade this Court that their proposed phased discovery plan is necessary here, because there are multiple distinct claims between different parties and bifurcation could efficiently resolve the threshold issue. *Id*. at 5-6. According to Defendants, the threshold fact issue "is whether it possesses a valid and enforceable right to sell various soft-drink refreshment products . . . in designated territories based on purported exclusive licensing agreements it has with PepsiCo ("Pepsi") and Keurig Dr. Pepper ("KDP") . . .

---

to assert a declaratory judgment claim. This phase of discovery will seek to resolve the following factual and legal issues:

1. Whether Brown Bottling has the sole right to use each trademark and/or sell each product in a certain territory.

2. Whether Brown Bottling's rights are enforceable against third parties, such as defendants.

3. Established mechanisms for enforcing Brown Bottling's contractual agreements with Trademark Owners, and the use and effectiveness of those mechanisms.

4. Any other factual and legal basis relevant to the declaratory judgment claims or defenses.

During this phase, Defendants request that discovery regarding claims and defenses related to the Lanham Act claim and the tortious interference claim be stayed.

Defendants further request a status conference following the close of the first phase of discovery, at which the parties will report to the Court regarding whether and to what extent the above-listed issues have been resolved, and whether the parties are prepared for dispositive motions on these issues and/or this claim. If so, then discovery on the Lanham Act and tortious interference claims would remain stayed pending final resolution of such dispositive motions. If not, then the parties would proceed with discovery on the Lanham Act and tortious interference claims."

Doc. [122] at 1-2.

to the exclusion of all others, including Defendants." *Id*. at 3.  Defendants request bifurcation of discovery to permit a prioritization of discovery, so the threshold issue can be put before the Court before the parties incur significant expenses.

Further, Defendants seek to stay discovery regarding the Plaintiff's tortious interference and Lanham Act claims and defenses, as they contend these claims, unlike the declaratory judgment claim, "present different and broader questions of fact and law, for each of the seven defendants." *Id*. at 7, 9.  Defendants contend that they are each individual wholesalers, with different businesses and customers, and with no connections to one another, apart from being named in the subject lawsuit.  *Id*. Defendants argue that the claims against each Defendant are distinct, as neither claim has identical fact and legal issues.  *Id*. Thus, they contend pursuing discovery, in the normal course, "could spiral exponentially, and unnecessarily." *Id*.  Finally, Defendants claim the Plaintiff will not be prejudiced if discovery is bifurcated, as it will allow discovery to proceed on the Plaintiff's purported issue regarding exclusivity of rights and stay discovery as to the pendent issues.  *Id*. at 10.  Defendants also claim the Plaintiff will not be prejudiced by staying discovery on its tortious interference claims, because it cannot provide the necessary element of malicious intent, without first establishing its exclusive right to sell products in the alleged designated areas.  *Id*.  Similarly, Defendants contend the Plaintiff will not be prejudiced if the Court stays discovery on the false affiliation claims under the Lanham Act.  *Id*.

Plaintiff vigorously opposes bifurcation of discovery.  Plaintiff asserts it would be "severely and unduly prejudiced" by bifurcating discovery in this case.  Doc. [132] at 2.  Plaintiff argues it is prejudicial to require Brown Bottling to pursue its case at the pace and direction chosen by Defendants, which it contends gives Defendants a faster track to potential dispositive motions, while freezing Plaintiff's exploration of its own claims.  *Id*. at 10.  Plaintiff also submits that the

phased discovery plan, presented by Defendants, "would not resolve all the claims at issue in this lawsuit, [but would instead] cause needless delay, expense, time and undue prejudice" to the Plaintiff. *Id*. Plaintiff argues the cases relied on by Defendants are distinguishable and support Brown Bottling's position that courts do not commonly bifurcate discovery, unless doing so will resolve a lawsuit. Specifically, Plaintiff points to *EEOC v. Lawler Foods, Inc.*[3,] cited by Defendants, and notes that case is distinguishable from the instant action, because it involved a class action lawsuit, which involved a large class of aggrieved persons and a distinct threshold issue that, if proven, would alleviate the need for a trial altogether. *Id*. at 8. Plaintiff submits that bifurcating discovery and proceeding with discovery on the declaratory judgment claim only will not resolve this entire lawsuit.

Plaintiff contests Defendants' request for bifurcation of discovery, arguing that the phased plan "would be the "epitome of inefficiency, delay and waste of resources." *Id*. at 6. Plaintiff opposes Defendants plan to stay discovery as to its tortious interference and Lanham Act claims. Plaintiff contends the Exclusive Bottling Agreements ("EBAs") and license agreements help establish the first element of the tortious interference claim–that the acts were intentional and willful. *Id*. at 5. In support of its claim that Defendants acted intentionally and willfully, Plaintiff argues it sent each Defendant a cease-and-desist letter by certified mail notifying each of Plaintiff's exclusive rights under the EBAs. *Id*. Regarding the Lanham Act claims, Plaintiff argues the EBAs and license agreements are "necessary merely to show that PepsiCo and KDP have not granted Defendants rights to distribute their trademarked products." *Id*. at 6.

---

3 Plaintiffs also seek to distinguish *Jinro Am. Inc.*, 266 F. 3d 993, 998 (9th Cir. 2001), cited by Defendants in their brief, noting that the issue on appeal in *Jinro* was the trial judge's decision to bifurcate trial, not discovery. *See* Doc. [132] at 9; *see also* Defendants' Motion, Doc. [123] at 6.

Plaintiff also submits that the same documents and witnesses will be involved in the declaratory judgment, Lanham Act, and tortious interference discovery. In support of this position, Plaintiff relies on two cases from this District, wherein Magistrate Judge Ball and Magistrate Judge Parker rejected requests to bifurcate discovery in insurance cases involving uninsured motorist claims and bad faith claims. *Id*. at 6-7 (citing Judge Ball's holding in *Wallace v. State Auto Prop. & Cas. Ins. Co.*, 2013 WL 1212201 at *1 (S.D. Miss. Jan. 10, 2013) (holding "the most efficient means of resolving the instant case is for all discovery to proceed.") and (citing Judge Parker's holding in *Hibley v. Mathis*, 2009 WL 765083, *1 (S.D. Miss. March 19, 2009) (holding "much of the discovery involving the various claims will involve the same people and many of the same records or documents. Proceeding with discovery as to all claims at this time is more efficient than a piecemeal approach.").

It is Plaintiff's position that "every defendant in every case would bifurcate discovery to develop its defenses to the exclusion of plaintiff's discovery supporting its own claims." *Id*. at 1. Plaintiff properly points out that this Court rarely grants the relief sought by Defendants. However, when relief is granted, it often occurs where the bifurcation would resolve the entire lawsuit. The Court finds that discovery regarding the EBAs and license agreements is necessary for the declaratory judgment, Lanham Act, and tortious interference claims. Further, the Court anticipates that many of the documents and witnesses involved will be the same for all claims, and it will be an inconvenience as well as a waste of lawyers' and witnesses' time, and other resources, to require duplicative discovery of the same documents and witnesses. *See Performance Aftermarket Parts Group, LTD. V. TI Group Auto Sys.,* 2006 U.S. Dist. LEXIS 75795 *5 (S.D. Tex. Oct. 4, 2006).

The Court determines that bifurcation of discovery in the manner sought by the Defendants is not appropriate in this action, because it will cause undue delay, inefficiency, and also waste

13

resources. The Court further finds that the proposed sequence and timing of discovery will unfairly prejudice Plaintiff and will not further the interests of judicial economy or fairness. *See Bunch v. Metro Cas. Inc. Co*. 2010 U.S. Dist. LEXIS 92104 *6 (S.D. Miss. Aug. 5, 2010). The Court concludes that bifurcation of discovery would not further convenience or avoid prejudice in this case and, therefore, denies the Motion to Bifurcate Discovery [122]. As discussed above, bifurcated trials, as opposed to bifurcated discovery, would be conducive to an expedited and economical resolution of this case.

## CONCLUSION

IT IS, THEREFORE, ORDERED that the Motion to Bifurcate Trial [119] is granted.

IT IS FURTHER ORDERED that the Motion to Bifurcate Discovery [122] is denied.

SO ORDERED, this the 7th day of September, 2022.

/s/ LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE